UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
VERTAMEDIA GROUP, INC. and
VERTAMEDIA, LLC,

              Plaintiffs                     MEMORANDUM AND ORDER
                                                        15-CV-6281

   - against –

PATIENT CONVERSATION MEDIA, INC.,

              Defendant.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Before the Court is Defendant Patient Conversation Media, Inc.'s ("PCMI") motion to vacate a default judgment under Fed R. Civ. P. § 60(b). The court clerk entered the default judgment on February 1, 2016 in favor of Plaintiffs Vertamedia Group, Inc. and Vertamedia LLC (together, "Vertamedia").[1] ECF 12. Defendants filed this motion to vacate five months later, on July 8, 2016. ECF 13. For the reasons stated below, the motion is DENIED.

## BACKGROUND

      Vertamedia is an online advertising company, specializing in "Pay Per Click" and "Cost Per View" advertisements. ECF 1 ("Complt.") at ¶ 8. Vertamedia places advertisements around the internet on behalf of the companies that employ it, and when an internet user clicks the advertisement, the user is directed to the company's website (commonly called "traffic") on which the user may purchase the company's product. The company pays a fee to Vertamedia for each click. Id. at ¶¶ 8-17. On May 21, 2013, PCMI, a Delaware corporation (id. at ¶ 4), and

---

[1] Plaintiff Vertamedia Group Inc., a Belize corporation, is a wholly owned subsidiary of Plaintiff Vertamedia LLC, a Nevada corporation. Complt. at ¶¶ 2-3, 8.

1

Vertamedia Inc. entered into a service agreement (the "Agreement") for Vertamedia to provide these online advertising services. Id. at ¶ 18, Ex. A.

The Agreement stipulated that Vertamedia would bill PCMI for the services rendered at the beginning of each month. Id. at ¶ 21, Ex. A. Vertamedia provided services from September 2013 through January 2, 2014. Id. at ¶¶ 22-23, 25, 27. PCMI paid Vertamedia's first two invoices, but failed to pay the invoices for services rendered in November 2013, December 2013 and January 2014, totaling $85,132, $36,111 and $985, respectively. Id. at ¶¶ 22-28. On January 6, 2014, Vertamedia suspended services to PCMI for failure to pay. Id. at ¶ 29. After attempting but failing to recover the invoiced amounts, Vertamedia initiated this action on November 2, 2015 for breach of contract and unjust enrichment. Id. at ¶¶ 30-31, 39-40.

Vertamedia served PCMI's registered agent with the summons and complaint on November 6, 2015. ECF 7. The agent sent the documents to PCMI at its address on file, but the envelope was returned unopened. ECF 13-2. [2] PCMI never responded. On January 22, 2016, the Court Clerk entered a certificate of default. ECF 10. Vertamedia moved for a default judgment on January 26, 2016. ECF 11. On February 2, 2016, the Clerk entered default judgment against PCMI pursuant to Fed. R. Civ. P. § 55(b)(1) (the "Judgment"). ECF 12.

Two months later, on April 4, 2016, Vertamedia filed a separate action, seeking to hold three new defendants liable for the Judgment as alter-egos of PCMI. See Vertamedia Group, Inc. et al v. Dailyrx, Inc. et al, 16-CV-1635 (NGG)(JO) (hereinafter, the "2016 Action"), ECF 1. The

---

[2] Notably, the declaration from the agent's employee is conspicuously devoid of any pertinent details about the service: it fails to state the address to which the summons was sent or the reason the envelope was returned. ECF 13-2. It is a justifiable assumption that the address to which the agent sent the summons and complaint is the same address at which Vertamedia served the defendants in the 2016 Action, infra, one of whom is a principal of PCMI. See ECF 13-1, Scalpati Dec., at ¶ 8.

2

2016 Action names two corporate defendants, Dailyrx, Inc. and Rxwiki, Inc., and one individual defendant, Donald Hackett.[3] The two corporate defendants were served at 4315 Guadalupe Street, Austin TX, the same address to which PCMI's agent apparently sent the summons and complaint in this action.  Compare 16-CV-1635, ECF 4 to 15-CV-6281, ECF 13-1, Scalpati Dec., at ¶ 8.  The 2016 Action is on hold, pending the outcome of this motion.

On July 8, 2016, approximately three months after service on the defendants in the 2016 Action, PCMI filed this motion, seeking to vacate the Judgment.

**DISCUSSION**

PCMI moves under Fed. R. Civ. P. § 60(b)(1), which allows the Court to vacate a judgment because of "mistake, inadvertence, surprise or excusable neglect."  "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).  In other words, Rule 60(b) "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." Id.  The Court weighs three factors in deciding a motion to vacate a default judgment: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted."  Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996).  "[A]ll doubts should be resolved" in PCMI's favor, as the party seeking relief.  Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983).

**I.      Willfulness**

A willful default requires a finding of conduct that is "more than merely negligent or careless."  S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998).  A default may be willful where

---

[3] Hackett is also a principal of PCMI who submitted a declaration in support of this motion to vacate.  See ECF 18-1.

3

"the conduct of counsel or the litigant was egregious and was not satisfactorily explained," id.; see also Am. All. Ins. Co., 92 F.3d at 61, or when "a defendant simply ignores a complaint without action." Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf, 241 F.R.D. 451, 454 (S.D.N.Y. 2007), aff'd, 316 F. App'x 51 (2d Cir. 2009). Additionally, when a party fails to update its address as required by law, the Court must look to the surrounding facts and circumstances of the case to determine whether the default was indeed willful. King v. Mastronardi Mason Materials, Inc., No. 98-CV-7389, 1999 WL 294738, at *2 (E.D.N.Y. Mar. 22, 1999); FedEx TechConnect, Inc. v. OTI, Inc., No. 12-CV-1674, 2013 WL 5405699, at *6 (S.D.N.Y. Sept. 23, 2013). The following considerations are relevant to that determination, none of which is singularly dispositive: "whether the defendant moved promptly to vacate the default upon notice of the judgment, whether the defendant made its correct address unavailable to plaintiff, whether the defendant had actual notice of the action, and whether the defendant knew that the plaintiff had a claim against them." Llolla v. Karen Gardens Apartment Corp., No. 12-CV-1356, 2016 WL 233665, at *2 (E.D.N.Y. Jan. 20, 2016).

As noted, Vertamedia duly served PCMI through its agent, which sent the pleadings to PCMI's address on file. ECF 18, Reply, p. 2 n.1 ("PCMI does not dispute that service upon [the agent] . . . constituted good service upon it."); ECF 13-2. PCMI does not definitively assert, but rather speculates, that it never received the summons and complaint because its main office at 4315 Guadalupe St., Austin TX was "shuttered" in late 2015. ECF 13-1, Scalpati Dec., at ¶ 8. PCMI says it only learned of the action when the defendants were served in the 2016 Action in April 2016 (id. at ¶ 10), and moved to vacate the Judgment about three months later. ECF 13.

"Shuttered" is not further described, and its exact meaning is ambiguous. In any event, it did not excuse PCMI from its obligation to keep its agent apprised of a current address where it

4

would accept service, Del. Code Ann. tit. 8, § 132, and PCMI has provided no reason for its failure to do so. PCMI knew of this dispute: Vertamedia attempted to recover the amounts due on at least two prior occasions. ECF 17-1, Sklyaroff Aff., at ¶ 20; Complt. at ¶¶ 30, 39. PCMI returned Vertamedia's calls and also attempted to correspond with Vertamedia about the unpaid invoices and its dissatisfaction with their services, even threatening to take legal action itself. ECF 13-1, Scalpati Dec., at ¶ 11; see also ECF 17-5, p. 1 (letter to Vertamedia stating that PCMI would "take appropriate measures" for overpayments it made to Vertamedia). PCMI knew, or should have known, that its continued refusal to pay invoices totaling $122,228.69 would result in a lawsuit, but still "shuttered" its main office with no forwarding address. See e.g. Swift Spinning Mills v. B&H Apparel, No. 00-CV-652, 2003 WL 942610, at *2 (S.D.N.Y. Mar. 6, 2003), aff'd sub nom. 96 F. App'x 761 (2d Cir. 2004) (defendants' default was willful because they did not update their registered address even though they "knew or should have known that if they failed to deal with the situation that had arisen, and continued to refuse to pay [] for the [goods], that [plaintiff] would likely sue"); FedEx TechConnect, 2013 WL 5405699 at *6 (finding defendant's default willful where, "[d]espite the fact that [Plaintiff] had contacted Defendant about this debt, and despite the fact that the payment dispute was never resolved, Defendant neglected to tell FedEx and the Secretary of State of its new address. . .").

Additionally, the Court is unconvinced that PCMI's office was actually "shuttered," precluding PCMI from receiving the agent's November 2015 mailing and having actual notice of the lawsuit. PCMI does not explain how service in the 2016 Action (which does not name PCMI) notified it of the Judgment, but service to the same address failed to put it on notice six months earlier. Donald Hackett is a principal of both PCMI and the corporate defendants in the 2016 Action. See ECF 18-1 at ¶ 1; 15-CV-6281, ECF 1, at ¶ 10. Even if PCMI's operations

5

were "shuttered," it is clear that some company, and Hackett himself, was operating at the address where the pleadings were sent. The fact that the envelope was mailed and returned unopened without any explanation, such as, for example, "addressee unknown," suggests it was intentionally returned by someone, warranting an inference of a conscious avoidance of knowledge. As such, PCMI's default indicates a willful attempt to avoid the dispute.

### II. Meritorious Defense

A meritorious defense requires that the defendant "present evidence of facts that, if proven at trial, would constitute a complete defense." McNulty, 137 F.3d at 740 (internal quotations omitted). "The existence of a meritorious defense is a key factor in the Rule 60(b) analysis . . . [and] the absence of such a defense is sufficient to support a district court's denial of a Rule 60(b) motion." N.Y. v. Green, 420 F.3d 99, 109 (2d Cir. 2005) (internal quotations omitted). This factor cuts clearly in Vertamedia's favor.

The basis of PCMI's sole defense is that its refusal to pay the invoices was justified by Vertamedia's breach of the Agreement. PCMI says it "understood and expected that [] traffic [to its website] would consist of human visitors, not 'bots' or similar automated browsers." ECF 13-1, Scalpati Dec., at ¶ 3. Nonetheless, Vertamedia allegedly failed to prevent robots, or "bots," from clicking PCMI's advertisements, and then charged PCMI for those non-human clicks that would never convert into sales. ECF 13-7, Memo. of Law, p. 4. PCMI argues that this was a breach of the Agreement that justified PCMI's non-payment. Id., p. 4.

The Agreement's sole clause regarding the quality of traffic reads:

> Verta Media will credit PCMi for visits blocked on Adometry's Known Offenders List & the 5,000 IPs from the Chameleon Botnet. This credit . . . will be applied to each month's invoice . . . ECF 17-3, Agreement, p. 6.

The Agreement does not obligate Vertamedia to block all "bad traffic," as PCMI suggests. Vertamedia was required to credit the invoices for two categories of clicks only: Adometry's

6

Known Offenders and the Chameleon Botnet.[4] Vertamedia attaches the service agreement between it and Adometry, a third party vendor, which obligates Adometry to filter and block clicks from its "known offender" list daily. ECF 17-6, Adometry Agreement, p. 7. PCMI does not dispute that Vertamedia hired Adometry to filter and block bad traffic. Rather, PCMI alleges that Adometry's services were "not particularly sophisticated and can be beaten." ECF 13-1, Scalpati Dec., at ¶ 6. Adometry's level of sophistication is irrelevant. PCMI expressly agreed that Adometry's block list would be used to filter non-human traffic, and Vertamedia satisfied that obligation. Even if it billed PCMI for "bad traffic," there is no evidence that Vertamedia breached the Agreement, and PCMI has not alleged a meritorious defense.[5]

### III. Prejudice

To determine prejudice, the Court must consider "[s]omething more" than the mere passage of time, such as whether the delay will "thwart plaintiff's recovery or remedy," or "may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Green, 420 F.3d at 110. PCMI moved to vacate about five months after the Judgment was entered. Conversely, Vertamedia has been seeking payment of the Outstanding Invoices for almost three years, and it expended time and resources to initiate

---

[4] A Google search reveals that the Chameleon Botnet was a sophisticated non-human "robot" discovered in March 2013 to have siphoned millions of dollars from online advertisers. The Court assumes that the Chameleon Botnet was included on Adometry's offender list, and there is no indication to the contrary.

[5] Additional contractual provisions between the parties undercut PCMI's defense as well. For example, the Agreement states that "[Vertamedia] will be solely responsible for tracking and calculating click-throughs ("CTs") delivered, the applicable CT price(s) and all other traffic measurements and data, and You [PCMI] understand and agree that such measurements and data will be the only and definite measure thereof." ECF 17-3, Agreement, p. 4. PCMI also agreed to Vertamedia's Terms & Conditions, which state that "[s]igning up for the VertaMedia.com advertising program does not guarantee that . . . such search terms will generate any traffic to [PCMI's] site," and "VertaMedia.com does not represent or warrant the quality of traffic delivered to [PCMI] . . ." ECF 17-4, Terms & Conditions, p. 1.

the 2016 Action. ECF 17-2, Opp., p. 6. At this point, three years of indebtedness are enough, and the portent of further delay justifiably warrants a finding of prejudice.[6]

## CONCLUSION

Having considered the relevant factors, all of which weigh determinatively against vacating the Judgment, and for the reasons stated herein, the motion to vacate the default judgment is DENIED.

SO ORDERED.

Dated:  Brooklyn, New York
        December 22, 2016

                                    /s/
                                    I. Leo Glasser
                                    Senior United States District Judge

---

[6] Vertamedia argues that PCMI is defunct and is seeking to vacate the Judgment solely to "buy[] time" for its alter egos, the 2016 Action's corporate defendants, which it worries will "dissolve and metamorphosize" into new companies to further avoid a judgment in this case. ECF 17-2, Opp., p. 6. There is no support for this contention, and the Court need not consider it.